JOHN T. WILLIAMS *et al.*, plaintiff in error, *vs.* JAMES M. MOBLEY, executor of Brittain Williams, deceased, defendant in error.

The minor legatees under a will, who are not the children of the testator, have no right, in a case pending in Chancery, upon a bill filed by the executor, for direction, to an interlocutory order, setting apart money for their support, unless the estate is solvent, and able to pay all just debts, and leave a sufficient fund, out of which to pay the sum necessary for their support. And it was error in the Chancellor to grant said order, when the solvency of the estate was denied, till it had been ascertained by the report of a Master in Chancery, or in some other legal way, that there would be a fund after the payment of the debts of the estate.

Equity. Support of minor legatees *pendente lite*. Decided by Judge WORRILL. Muscogee Superior Court. October Term, 1867.

In 1847, Brittain Williams made a will, by which he bequeathed to the sons of Thomas A. Williams, his grand-nephews, John, James F. C., B. H., Charles, Brittain, and Ozias S., respectively, certain slaves, to be delivered to them respectively, as they attained their majority, and if either died before his majority, his slaves were to go to the survivors. Thomas A. Williams was made his executor, with power to possess, use and hire all said slaves, till the sons arrived of age, without accounting therefor. And he gave to his said executor all the balance of his estate, in trust, to pay his debts, and then divide the *residuum* between his children, thereafter to be born, at their majority, and if no "new issue," then to the "old issue," as they respectively arrived of age.

In 1855, Thomas A. Williams had died, leaving other children, born since said will was made. Testator made some changes in his will, none of which are material for our present purposes, except the appointment of James M. Mobley his executor, and providing that, besides his commissions, he should have such extra compensation, as executor, annually, as the Ordinary might direct. His executor was to keep his slaves together on the plantation or plantations, and work the same for the benefit of the legatees, so long as it was not injurious to the estate, giving off to each, his or her share as he or she became of age.

In 1863, testator died, leaving real estate, worth, say $15,-000 00, one hunrded slaves, worth, say $50,000 00, and other personalty, worth, say $5,000 00. Mobley proved the will and codicils, qualified as executor, took possession of the estate, and had the same inventoried. The inventory was made in Confederate currency, then greatly below par.

In December, 1863, the perishable property sold for cash, in such currency, for $16,171 90, of which legatees took $4,-667 05, of which, also, the executor bought in, for the plant-ation and use of the minor legatees, $7,391 55, so that the executor got but $4,113 30, in cash, and disbursed it accord-ing to law. John T., J. F. C., and B. H. Williams were of age, and took their shares, etc., and in December, 1863, the

executor sold eight hundred acres of land, at public out-cry' for cash, in said currency, and it was bid off by said John T. and J. F. C. Williams, at $13,600 00.   They gave their note therefor, due at one day after date, which has been credited with $5,768 72, in payment of legacies to the makers, etc.   The executor also paid Charles L. Williams $905 75 in property, $4,037 20 in cash, and his slaves.   Brittain, Ozias, William, Sarah L., and Joel F. Williams are minors, and have had no legacy but a support of all of them, (except Joel F.;) and their slaves were emancipated by the State.

The executor believed $15,000 00 would pay all the debts of the estate, and expenses of administration; he paid $5,-000 00 to debts, and $2,000 00 to such expenses, in such currency.   After the war, slaves being gone, etc., he advertised.for the creditors, (who had failed to give him notice,) and found it will still take $14,000 00 to pay the unpaid debts, and the future expenses of administration.   The assets of the estate are, the plantation, worth, say $5,000 00, perishable property, worth, say $915 60, and notes for negro hire.

To save expenses of many suits against the estate, to get direction how he should act, etc., the executor filed his bill in equity, praying that the creditors should not sue, but come in, and settle under this bill; that the legatees of age, (who had given refunding bonds,) should be enjoined from disposing of the property which they got from the estate, and that said property be held for its *pro rata* share, necessary to pay the debts, (the legatees being insolvent,) and that the equities between the legatees, and between them and himself, should be fully adjudicated.

In October, 1867, while this bill was pending, and undisposed of, a motion was made to provide for the support of said minors, for the year 1867, out of the funds of the estate. The solicitors of the creditors, parties to said bill, resisted the motion, upon the ground that said estate was averred to be insolvent, and because these minors were only nephews of the testator.   The Court ordered $200 00 to be paid to each of said minors, for his support, the same to be paid quarterly.

Williams *et al.*, *vs.* Mobley, ex'r.

This is assigned as error. At April Term, 1868, the Judge ordered another $100 00 paid to each, subject to the decision of this Court, upon the other order. (The cause was held up at last term, because of the military order as to old debts.)

INGRAHAM & CRAWFORD, PEABODY, for plaintiffs in error.

BIGHAM, B. HILL, for defendants in error.

BROWN, C. J.

As these minor legatees are not the children of the deceased. they can not claim a support under section 2530 of the Revised Code, which gives the widow and children of the deceased, a support for one year, out of the estate, " to be preferred before all other debts."

If they have an estate of their own, the Court of Chancery may order their support out of it, pending this litigation. Story's Equity, 1354 and 1356. But they have no right to be supported out of a fund to which they are not entitled. As creditors are to be satisfied before legacies are paid, and as it is charged by the creditors, that the estate is insolvent, and unable to pay all the debts, no order should have been granted, setting apart a fund out of the estate, for the support of these minor legatees, who are grand-nephews, till it was made to appear, to the satisfaction of the Court, by the report of a Master in Chancery, or in some other legal way, that there was a clear fund after the payment of the debts of the estate, out of which the support might be had 13 Vesey, 92.

Judgment reversed.